# Exhibit C

 

March 5, 2018                                        Sent by electronic mail

Mr. Michael Marquis
Freedom of Information Officer
U.S. Department of Health and Human Services
Hubert H. Humphrey Building, Room 729H
200 Independence Avenue, SW
Washington, D.C. 20201

Re: Request under the Freedom of Information Act

Dear Mr. Marquis,

The Center for Reproductive Rights and the National Women's Law Center submit this request
pursuant to the Freedom of Information Act, 5 U.S.C. §§ 552 et seq. (FOIA), and the U.S.
Department of Health and Human Services' implementing regulations, 45 C.F.R. Part 5.

This request is meant to serve as an addendum to the request previously filed by the Center for
Reproductive Rights and the National Women's Law Center on January 29, 2018. The previous
request, with Request Number **2018-00512-FOIA-OS**, requested certain records up to the time
of its processing. We have reason to believe there are relevant, more recent records that may not
be captured under the previous request.[1] Thus, we submit this new request in order to capture
more recent records created on or after January 29, 2018.

We ask that the release of records pursuant to the previous request (Request Number 2018-
00512-FOIA-OS) not be contingent on or delayed due to the processing of this request, and vice
versa. We ask that all records pursuant to each request be provided as soon as they are available.

## Records Requested

As used herein, the word "records" means all records as defined in 45 C.F.R. § 5.3.
Additionally, as used herein, any reference to the U.S. Department of Health and Human
Services Office of Civil Rights (HHS OCR) encompasses all regional offices as well as the
central office located in Washington, D.C.

We request the following within twenty business days:

---

[1] Jessie Hellmann, *New HHS office that enforces health workers' religious rights received 300 complaints in a
month*, THE HILL (Feb. 20, 2018), http://thehill.com/policy/healthcare/374725-hhs-new-office-that-enforces-
religious-moral-rights-of-health-workers.

1

1. Trackers, charts, catalogues, spreadsheets, internal databases, and similar records created or obtained by HHS on or after January 29, 2018, regarding or relating to complaints filed with HHS OCR alleging a violation of civil rights on the basis of religion, or categorized by agency personnel as alleging a violation of civil rights on the basis of religion, including:
   a. The weekly, monthly or annual volume of complaints received alleging a violation on the basis of religion;
   b. The geographic origin of complaints alleging a violation on the basis of religion;
   c. The geographic location of the agency or organization against which complaints have been filed alleging a violation on the basis of religion;
   d. The total length of investigation for each complaint alleging a violation on the basis of religion;
   e. The nature of the resolution of each complaint alleging a violation on the basis of religion, such as closure after investigation or closure on administrative grounds;
   f. Any other document utilized by HHS OCR to organize or otherwise track complaints alleging violations on the basis of religion.
2. All complaints received by HHS OCR alleging a violation of civil rights on the basis of religion, dated on or after January 29, 2018;
3. All records, dated on or after January 29, 2018, referring or relating to HHS review and investigations of complaints alleging a violation of civil rights on the basis of religion, including but not limited to:
   a. All records regarding or relating to the process and timeline by which each complaint was closed or resolved, including any trackers, charts, memos, catalogues, spreadsheets, or internal databases, indicating the number of complaints closed without investigation, the number of complaints investigated but where no violation was found, the total length of investigation for each complaint, and the number of complaints investigated for which a violation was found;
   b. All records relating to final agency determination of each complaint, including letters, recommendations, initiation of enforcement proceedings, and final decisions upholding a finding of violation on each complaint;
   c. All records, including any communications, sent between HHS OCR and complainants regarding a complaint filed alleging a violation of civil rights on the basis of religion;
   d. All records, including any communications, sent between HHS OCR and an agency or organization against which a complaint was filed alleging a violation on the basis of religion.

4. Trackers, charts, catalogues, spreadsheets, internal databases, and similar records created or obtained by HHS on or after January 29, 2018, regarding or relating to complaints filed with HHS OCR alleging a violation of federal "conscience protections," or categorized by agency personnel as alleging a violation of federal "conscience protections," including:
   a. The weekly, monthly or annual volume of complaints received alleging a violation of federal "conscience protections";

2

b. The geographic origin of complaints alleging a violation of federal "conscience protections";

c. The geographic location of the agency or organization against which complaints have been filed alleging a violation of federal "conscience protections";

d. The total length of investigation for each complaint alleging a violation of federal "conscience protections";

e. The nature of the resolution of each complaint alleging a violation of federal "conscience protections," such as closure after investigation or closure on administrative grounds;

f. Any other document utilized by HHS OCR to organize or otherwise track complaints alleging a violation of federal "conscience protections."

5. All complaints received by HHS OCR alleging a violation of federal "conscience protections," dated on or after January 29, 2018;

6. All records, dated on or after January 29, 2018, referring or relating to HHS review and investigations of complaints alleging a violation of federal "conscience protections," including but not limited to:

a. All records regarding or relating to the process and timeline by which each complaint was closed or resolved, including any trackers, charts, memos, catalogues, spreadsheets, or internal databases, indicating the number of complaints closed without investigation, the number of complaints investigated but where no violation was found, the total length of investigation for each complaint, and the number of complaints investigated for which a violation was found;

b. All records relating to final agency determination of each complaint, including letters, recommendations, initiation of enforcement proceedings, and final decisions upholding a finding of violation on each complaint;

c. All records, including any communications, sent between HHS OCR and complainants regarding a complaint filed alleging a violation of federal "conscience protections;"

d. All records, including any communications, sent between HHS OCR and an agency or organization against which a complaint was filed alleging a violation of federal "conscience protections."

7. All records regarding the submission of complaints alleging violations of religious freedom or federal "conscience protections," not otherwise captured above, including those records received after January 29, 2018, under the new unified category of violations of conscience and religious freedom.

8. All records, including any communications, calendar entries (including invitations) and all attachment to calendar entries, sent between HHS, including any of its operating divisions and agencies, any individual employees, agents or contractors acting on behalf of HHS, and:

a. The Family Research Council, (including but not limited to any individual members of staff) that refer or relate to civil rights violations, federal "conscience protections," or any aspect of the Office of Civil Rights complaint or investigation process, dated on or after January 29, 2018;

3

b. The Heritage Foundation, (including but not limited to any individual members of staff) that refer or relate to civil rights violations, federal "conscience protections," or any aspect of the Office of Civil Rights complaint or investigation process, dated on or after January 29, 2018;

c. Alliance Defending Freedom, (including but not limited to any individual members of staff) that refer or relate to civil rights violations, federal "conscience protections," or any aspect of the Office of Civil Rights complaint or investigation process, dated on or after January 29, 2018;

d. Americans United for Life, (including but not limited to any individual members of staff) that refer or relate to civil rights violations, federal "conscience protections," or any aspect of the Office of Civil Rights complaint or investigation process, dated on or after January 29, 2018;

e. National Right to Life, (including but not limited to any individual members of staff) that refer or relate to civil rights violations, federal "conscience protections," or any aspect of the Office of Civil Rights complaint or investigation process, dated on or after January 29, 2018.

In addition to the records requested above, the Center for Reproductive Rights and the National Women's Law Center also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

The Center for Reproductive Rights and the National Women's Law Center seek all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. No category of material should be omitted from search, collection, and production.

Please search all records regarding agency business. You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts. Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; the Center for Reproductive Rights and the National Women's Law Center have a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered your agency's prior FOIA practices unreasonable. In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches. Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools would capture that email under Capstone.

Accordingly, the Center for Reproductive Rights and the National Women's Law Center request that your agency use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. The Center for Reproductive Rights and the National Women's Law Center are available to work with you to craft appropriate search terms. However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." If it is your position that any portion of the requested records is exempt from disclosure, the Center for Reproductive Rights and the National Women's Law Center request that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[2] Moreover, the *Vaughn* index "must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[3]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

You should institute a preservation hold on information responsive to this request. To ensure that this request is properly construed, that searches are conducted in an adequate but efficient

---

[2] *Founding Church of Scientology v. Bell*, 603 F. 2d 945, 949 (D. C. Cir. 1979).
[3] *King v. United States Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

manner, and that extraneous costs are not incurred, the Center for Reproductive Rights and the National Women's Law Center welcome an opportunity to discuss their request with you before you undertake your search or incur search or duplication costs.

**Waiver or Limitation of Fees**

We request a waiver (or, in the alternative, a reduction) of all fees under 5 U.S.C. § 552(a)(4)(A)(iii) and 45 C.F.R. § 5.54 because disclosure of the information would be in the public interest. The subject of this request concerns the operations of the federal government and HHS OCR, and the disclosures will likely contribute to public understanding of those operations in a significant way. These records will provide important information about the types of civil rights complaints that are filed at the HHS OCR and how the HHS OCR processes such complaints. They will also shed light on the prevalence of specific types of complaints filed at the HHS OCR, how the complaints are addressed or dismissed, etc. The information from this request may also shed more light on how the agency is approaching the interpretation of federal conscience and religious freedom protections. The Center for Reproductive Rights and the National Women's Law Center do not make this request for commercial use.

Further, the Center for Reproductive Rights and the National Women's Law Center will disseminate the information to "a reasonably broad audience of persons" through our social media accounts and our websites. If a waiver or reductions in fees is not granted on the basis of the disclosure being in the public interest, we request a waiver (or, in the alternative, a reduction) of all fees under the "representative of the news media" exception in 5 U.S.C. § 552(a)(4)(A)(ii)(II). The term, "representative of the news media," as used in the Freedom of Information Act, is defined as any person or entity "that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); 45 C.F.R. § 5.3. "Examples of news media entities include … publishers of periodicals, including print and online publications that disseminate news and make their products available through a variety of means to the general public." 45 C.F.R. § 5.3.

The Center for Reproductive Rights publishes a regular newsletter that currently has approximately 250,000 subscribers. Additionally, the Center for Reproductive Rights routinely gathers information from government and other sources and use that information to publish reports, briefing papers, fact sheets, periodicals, articles, blog posts, and other educational materials, which are readily available to the public through the Center for Reproductive Rights' website (www.reproductiverights.org) and social media accounts (for example, on the Center's Twitter stream @reprorights). Over the past month, the Center for Reproductive Rights has had over 69,000 visits leading to 124,000 page views – of which over 58,600 were unique visitors. Additionally, the Center has well over 80,000 followers on Twitter.

The National Women's Law Center has a supporter base of over 800,000 followers across our email lists, Facebook page (http://www.facebook.com/nwlc, 477,000 page likes), and Twitter account (@nwlc, 60,000 followers). In the last month, the Law Center website, www.nwlc.org, had nearly 125,000 visits leading to 186,000 page views – of which over 100,000 were unique visitors.

Accordingly, the Center for Reproductive Rights and the National Women's Law Center request that we be accorded "representative of news media" status and that any fees accrued for this request be waived, or alternatively, reduced.

This request is primarily and fundamentally for non-commercial purposes. As 501(c)(3) nonprofit organizations, the Center for Reproductive Rights and the National Women's Law Center do not have a commercial purpose and the release of the information requested is not in the organization's financial interest.

Founded in 1992, the Center for Reproductive Rights is the only global legal advocacy organization dedicated to reproductive rights, and its litigation and advocacy has played a key role in expanding access to reproductive health care around the world. The Center for Reproductive Rights uses information gathered, and its analysis of information gathered, to educate the public through reports, press releases, or other media, as discussed above. Likewise, the Center for Reproductive Rights also makes the materials gathered available on its public website and promote their availability on social media platforms, such as Facebook and Twitter. The Center for Reproductive Rights has demonstrated commitment to the public disclosure of documents and creation of editorial content.

Founded in 1972, the National Women's Law Center has worked for more than forty-five years to protect and promote equality and opportunity for women and families. The National Women's Law Center champions policies and laws that help women and girls achieve their potential at every stage of their lives — at school, at work, at home, and in their communities. The National Women's Law Center uses information gathered, and its analysis of information gathered, to educate the public through reports, press releases, or other media. The National Women's Law Center has demonstrated commitment to the public disclosure of documents and creation of editorial content.

Accordingly, the Center for Reproductive Rights and the National Women's Law Center qualify for a fee waiver.

In the event that you determine you are unable to waive the fees, please provide us with prior notice if the total fees authorized will exceed $200 so that we can discuss arrangements.

\* \* \*

## Conclusion

The Center for Reproductive Rights and the National Women's Law Center look forward to working with your agency on this request. Thank you for your prompt attention to this matter.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the Center for Reproductive Rights and the National Women's Law Center request that responsive materials be provided electronically by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to:

7

Susan D. Inman
Center for Reproductive Rights,
1634 Eye Street NW, Suite 600
Washington, D.C. 20006
Email: sdinman@reprorights.org

If it will accelerate release of responsive records, please also provide responsive material on a rolling basis.

If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact us at (202) 524-5526 if you have any questions. Thank you for your assistance.

Sincerely,

Susan D. Inman
Chief Counsel, Federal Policy and
Advocacy, Center for Reproductive Rights

Gretchen Borchelt
Vice President for Reproductive Rights and
Health, National Women's Law Center